CLARK, C. J., dissenting.
The prisoner was convicted of murder in the first degree of A. W. Howell, at Spring Term, 1903, of the Superior Court of Watauga. There was evidence on the part of the State tending to show that a warrant was issued by a justice of the peace and placed in the hands of Calvin Turnmire, a constable, to be served on the prisoner, and that another warrant, issued by a justice of the peace named Smith, in which the prisoner and Boone Potter, his near kinsman, were (720) intended to be charged with a forcible trespass, was placed in the hands of the deceased as a specially deputized officer for service on the accused; that Turnmire and the *Page 521 
deceased, together with Will Hamby, Joe Wilson and June Snider, on the night before the homicide, met and stayed all night in the house of a man by the name of Hodges, a short distance from a sawmill, where it was anticipated that Clarence and Boone Potter would bring saw logs to the mill; that on the early morning of the next day, 5 November, Clarence and Boone arrived with a load of logs on a wagon drawn by four mules; whereupon Turnmire, who testified that he had summoned Hamby to assist him in the arrest of Clarence, while the deceased and the others, Wilson and Snider, where to arrest Boone, walked up to Clarence and told him that he had a warrant for him; that Hamby read the warrant to Clarence, who was standing behind the wagon and about fifteen or twenty paces from Boone, who was in front of the lead mule; that Hamby, when he read the warrant, in an ordinary tone, had his back towards Boone, and that just about the time of the conclusion of the reading of the warrant by Hamby to Clarence, Boone came around to Clarence and said, "Come on, cousin"; whereupon both mounted the wagon and drove rapidly off down the road toward their home. There was no evidence that either one of the party had said a word about the arrest of Boone before the wagon was driven off. The wholeposse overtook and headed off the team, after having given chase for about three hundred yards, at a branch or creek that crossed the road. The witnesses for the State testified that the deceased, with a pistol in one hand and the warrant plainly visible in the other, headed off Boone, who was driving the team, at the same time demanding his surrender and notifying him that he had a warrant for his arrest; that thereupon Clarence, who was on the other side of the team, handed his pistol across the hind mule to Boone, who thereupon shot the deceased in the arm and breast, while (721) almost at the same time the prisoner Clarence struck the deceased on the forehead with a large stone. The prisoner testified that the deceased fired at Boone first. Howell died three days afterwards. Four physicians were examined, but we can get very little out of their evidence, except that either wound might have caused the death.
The case was tried with great care by his Honor, and with marked ability he instructed the jury upon the many perplexing and important features of the case. In one aspect of the case, however, his Honor committed an error, that error being founded on a mistaken view of the nature of certain of the evidence. His Honor, in stating the contention of the State, used this language: "Upon this indictment the State first maintains that the prisoner is guilty of murder in the first degree; that he maliciously and feloniously and with premeditation and deliberation slew the *Page 522 
deceased with a deadly weapon, or aided, assisted and helped to do it, or conspired, co-operated and acted in concert with Boone Potter in thus slaying the deceased." It is to be seen from the contention of the State that a conspiracy on the part of Boone and the prisoner to kill the deceased was one ground upon which the State relied to show deliberation and premeditation on the part of the prisoner, and on that point his Honor instructed the jury: "You are instructed, further, that the burden is upon the State to satisfy you beyond a reasonable doubt, not only that the killing was done by the prisoner, or by his assistance, aid, help and consent, or in consequence of concert and conspiracy with another" (the word "conspiracy" italicised by us), "but also with deliberation and premeditation. . . . And if you find that the prisoner slew the deceased with a deadly weapon, or that he conspired with or aided and abetted Boone in doing the (722) killing with a deadly weapon, you will examine all the evidence and circumstances and say whether you are satisfied from them that the killing was done with premeditation and deliberation; and if you so find, you will find the prisoner guilty of murder in the first degree." His Honor, to make clearer his meaning in connection with that part of his charge, said: "In other words, if the State has shown beyond a reasonable doubt, and you so find, that the deceased and those associated with him had a lawful warrant from a justice of the peace to arrest Clarence Potter, the prisoner, and also a lawful warrant to arrest Boone Potter for shooting into and breaking into a house, and on the day the deceased was injured the deceased and the posse with him, duly summoned for the purpose and acting with him as such posse, read the warrant to Clarence and notified him to consider himself under arrest, and that this was done openly, in the daytime, within about fifteen paces of Boone Potter; and you further find that the Clarence failed to submit to the arrest, but, under a suggestion of Boone, got on the wagon then and there hitched and under their control, and hurriedly drove away; and you further find that the deceased and his associates, with their warrants, pursued and overtook them, said Clarence and Boone and their associate, Heck, at the branch, and that thereupon the deceased, with the warrant open in his hand, notified Boone that he had a warrant for him, in hearing distance of Boone and Clarence, and, by declarations made by the deceased or the posse, both Boone and Clarence were fixed with the knowledge that the deceased and his associates were clothed with a warrant to arrest Boone; and you find that Boone hastily descended from the wagon on one side and Clarence on the other, and, by preconcert and understanding and agreement between themselves, the *Page 523 
prisoner handed Boone a pistol over the mules, in consequence of words or motions between themselves, and thereupon Boone deliberately and premeditatedly shot at the deceased (723) twice in rapid succession, with the deliberate intention to take his life; and you find that the death of the deceased ensued from the wound inflicted, Boone Potter would be guilty of murder in the first degree; and f, in addition to the foregoing facts, you find that Clarence understood that the officers had a warrant for himself, and had read it to him, and that he was there engaged in escaping from the officers, and that Boone and this and that they were acting in concert in flight; and you find that Boone and Clarence, from their acts and conduct, were acting in concert throughout, and both had predetermined and agreed to resist arrest to the extent to take the life of any one of the officers authorized to execute the warrant, and with premeditated and deliberate purpose to resist the arrest of Boone by the deceased or his associates, or the arrest of himself, the object of the officers being known, and with a premeditated purpose to kill to effect their purpose, and in pursuance of this purpose he handed Boone the pistol to kill the deceased, and Boone shot the deceased with the pistol, and thereby inflicted injuries, from which the deceased died, the prisoner is guilty of murder in the first degree, and you will so find."
It is clearly to be seen from his Honor's instruction that he not only regarded what occurred at the sawmill at the time the officers attempted to arrest Clarence as evidence tending to show a part of a conspiracy between Boone and Clarence to resist the officers, even if it became necessary to kill one or all of them, but he carefully recited to the jury all the incidents connected with the attempted arrest. We cannot agree with his Honor that the facts connected with the attempted arrest at the sawmill furnished any evidence whatsoever of a conspiracy to kill one or all of the officers or any one of the posse. Boone, by all of the evidence, did not know at the sawmill and at the time of the attempted arrest of Clarence that any warrant had been (724) issued for him. It seems that the jury believed that Boone heard the warrant read to Clarence, although he was fifteen or twenty paces off, with a wagon and four mules between him and Hamby, who read the warrant, and Hamby speaking in an ordinary tone and with his back towards Boone; but that evidence having been believed by the jury, though it might have been sufficient to justify them in finding that there was an agreement between Boone and the prisoner, entered into at the very time of the arrest of Clarence, to effect the escape of Clarence, it certainly, in our judgment, was not evidence of a conspiracy *Page 524 
to kill the deceased or any member of the posse. In fact, the witnesses for the State showed that neither Boone nor Clarence had made any preparations to use Clarence's pistol on the occasion before the arrival of the party at the branch where the team was headed off; neither Boone nor the prisoner had heard anything of the warrants or the preparations to arrest either Boone or Clarence before their arrival at the sawmill; and at the branch Clarence's pistol was between his overalls and his trousers, and his suspenders had to be unbuttoned before he could get the pistol out; all of which goes to show that not until the parties left the sawmill was there use the pistol.
As we have said, this case was conducted by his Honor with marked ability, and, so far as his connection with the making of the case on appeal is concerned, all is correct; but the remainder of the record comes before us in poor shape. In many parts of the evidence bearing on vital points of the case we are at a loss to understand what the witnesses said; then there are hyphens and blank spaces and inconsistent words, confusing to the understanding. This is especially so in respect to the two warrants, said to have been issued for the prisoner and Boone. Those papers are referred to as "Exhibits A and B," but they are nowhere to be seen in (725) the record. They are not alleged to have been lost, and no proof of their contents is offered.
For the one error pointed out, there must be a
New trial.